UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JACQUELYN RHOADES, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Docket No. 07-117-B-W |
| ) | |
| CAMDEN NATIONAL ) | |
| CORPORATION, ) | |
| ) | |
| Defendant ) | |

### RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant, Camden National Corporation, moves for summary judgment on the sole claim asserted against it in the complaint, unlawful retaliation under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA"). I recommend that the court deny the motion.

### I. Summary Judgment Standards

#### A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve

1

the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with

an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de Puerto Rico*, 527 F.3d 209, 213-14 (1st Cir. 2008).

## II. Factual Background

The following undisputed material facts are appropriately presented in the parties' respective statements of material facts submitted under Local Rule 56.

The plaintiff was hired by the defendant as a compliance assistant on June 6, 2004. Plaintiff's Statement of Additional Material Facts ("Plaintiff's SMF") (included in Plaintiff's Opposing Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 24) beginning at 34) ¶ 1; Defendant's Reply to Plaintiff's Statement of Additional Material Facts

("Defendant's Responsive SMF") (Docket No. 29) ¶ 1.[1] She received quarterly and six-month performance evaluations from October 2004 through May 2007 that indicated she was meeting expectations or exceeding expectations in all areas reviewed. *Id*. ¶¶ 2-6, 8, 13-16, 21, 23, 26, 34-35, 37-38, 41-42, 80-81.[2]

From the time she was hired until the end of March 2006, the plaintiff's supervisor was Ivers. Defendant's Statement of Material Facts Not in Dispute ("Defendant's SMF") (Docket No. 18) ¶ 34; Plaintiff's Responsive SMF ¶ 34. The plaintiff was the only employee supervised by Ivers. Id. ¶ 35. The plaintiff was counseled on or about June 29, 2005 and in follow-ups, July 5, 2005, July 27, 2005, October 24, 2005, October 27, 2005, December 13, 2006, and March 23, 2007. *Id*. ¶¶ 1-6, 9-10. She was placed on performance improvement plans on July 27, 2005 and October 27, 2005. *Id*. ¶¶ 4, 6. Ivers discussed the plaintiff with Joanne Campbell many times. *Id.* ¶ 38.

From the end of March 2006 until October 2006, the plaintiff reported to Campbell. *Id*. ¶ 41. In the late fall of 2006, the plaintiff began reporting to Mazurek. *Id*. ¶ 47. Approximately 20 other people reported to Mazurek. *Id*. Campbell made the decision to terminate the plaintiff. *Id*. ¶ 50.[3]

---

[1] The defendant begins its responsive statement of material facts with a "general objection" to the plaintiff's statement of material facts on the grounds that it contains 155 separate statements while the defendant's initial statement of material facts includes only 57 separate statements, thus allegedly violating this court's Local Rule 56(c) requiring a party opposing a motion for summary judgment to submit a short and concise statement of material facts. Defendant's Responsive SMF at 1. Because the number of paragraphs in a statement of material facts does not by itself demonstrate a violation of Local Rule 56(c) and because the plaintiff's additional statements are relevant, the objection is overruled. I do not find it necessary to reach the defendant's more specific objections to certain paragraphs in the plaintiff's statement of material facts.

[2] There were two specific exceptions to this statement. The quarterly evaluation dated October 27, 2005 indicated that the plaintiff was not meeting expectations in one area, Plaintiffs' SMF ¶ 8, Defendant's Responsive SMF ¶ 8, and her January 12, 2006 evaluation indicated that the plaintiff needed improvement in the area of dependability, *id.* ¶ 17.

[3] The plaintiff's employment was apparently terminated on June 11, 2007. Defendant's SMF at 6 (subtitle). Neither party has included this properly-supported central fact in her or its statement of material facts, however.

The plaintiff received a verbal warning in December 2006 with respect to a remark regarding the training manager. Plaintiff's SMF ¶ 40; Defendant's Responsive SMF ¶ 40. In February 2007, Mazurek recommended that the plaintiff receive a 3% raise, which Campbell approved. *Id.* ¶¶ 43-44. On March 15, 2007, the plaintiff's mother, who suffered from Alzheimer's Disease, broke her hip and was admitted to the hospital; later, she was transferred to a nursing home. *Id.* ¶ 45. In order to help care for her mother, the plaintiff made a request for intermittent FMLA leave on March 15, 2007. *Id.* ¶ 46. From March 15 to March 23, 2007, the plaintiff was responsible for working with her mother's medical providers on issues of her mother's medical care, her hospital admission, and her transfer to a nursing home. *Id.* ¶ 48.

On March 23, 2007 Mazurek, had a conversation with the plaintiff about personal telephone calls, loudness while on the telephone, and interrupting of coworkers. *Id.* ¶ 50. Mazurek asked the plaintiff to limit calls relating to her mother's care to lunch hours and breaks. *Id.* ¶ 51. The plaintiff told Mazurek that she had to take calls from her mother's medical care providers when the calls came in. *Id.* ¶ 52. Mazurek discussed this counseling conversation with Campbell. *Id.* ¶ 55. She did not issue a written warning or a performance improvement plan with respect to these issues. *Id.* ¶ 56.

The plaintiff applied for a second intermittent FMLA leave on April 24, 2007 to care for her mother. *Id.* ¶ 57. This request was approved. *Id.* The plaintiff's mother was readmitted to the hospital on April 23, 1007 and passed away on April 30, 2007. *Id.* ¶ 58. In the interim, the plaintiff's father began to have significant medical issues on April 19, 2007 and spent a day in the hospital. *Id.* ¶ 63. His health deteriorated further upon the death of her mother, and he was readmitted to the hospital on May 2, 2007. *Id.* ¶ 65. The plaintiff returned to work on May 9, 2007. *Id.* ¶ 66. A meeting with Mazurek, Crosby, and the plaintiff was held on May 10, 2007 at

which the plaintiff was told that she needed to stay focused at work, that she should try to limit her personal telephone calls to her lunch and break times, that she should make a conscious effort to try to keep work and home issues separate, and that she was expected to work 40 hours per week. *Id*. ¶¶ 68, 72-75. The plaintiff said that she could not guarantee 40 hours per week due to her father's health and that she was in the process of applying for FMLA leave to care for her father. *Id*. ¶ 76. In her notes, Mazurek characterized the plaintiff's absences in 2007 as "significant attendance issues." *Id*. ¶ 78.

Each of the three intermittent leaves for which the plaintiff applied was approved. Defendant's SMF ¶ 12; Plaintiff's Responsive SMF ¶ 12.[4] The plaintiff missed a total of 206.3 hours during the first five months of 2007, roughly equating to five weeks missed out of twenty-two weeks worked. *Id*. ¶ 13. Of this, 2.6 weeks (104 hours) was attributable to FMLA. *Id*. ¶ 14. Approximately 46 hours of unscheduled personal time off ("PTO") had no connection with FMLA and were taken before the plaintiff's first FMLA request in March. *Id*. ¶ 15. The plaintiff did not take any FMLA leave after a full day on May 8 and 4.5 hours on May 30, 2007. *Id*. ¶ 17. The plaintiff had a pattern of using all of her PTO in the front part of the year. *Id*. ¶ 46. Absenteeism was a problem. *Id*. The plaintiff tracked all of her time on a daily basis as though she were an hourly employee, when in fact she was an exempt salaried professional employee. *Id*. This resulted in the plaintiff's use in 2005 of PTO which should not have been available until 2006. *Id*. After PTO had been exhausted, the plaintiff would take time off without pay. *Id*.

---

[4] The plaintiff purports to deny paragraph 12 of the defendant's statement of material facts, but only based on the assertion that "Defendant did deny Plaintiff's ongoing medical leave for her father by terminating her employment on June 11, 2007, less than 2 weeks after the leave was approved." Plaintiff's Responsive SMF ¶ 12. This is not a denial of the assertion made by the plaintiff; approved leave and termination are two distinct things. Because this paragraph of the defendant's statement of material facts is supported by the citations given to the summary judgment record, it is deemed admitted. *See* Local Rule 56(f).

Mazurek and the plaintiff met on May 29, 2007 to discuss the performance evaluation of the plaintiff for the first trimester of 2007 that Mazurek had completed.  Plaintiff's SMF ¶¶ 80, 82; Defendant's Responsive SMF ¶¶ 80, 82.  The plaintiff questioned Mazurek's comments about her attendance on the ground that the absences were for FMLA leave.  *Id*. ¶ 85.  At the plaintiff's request, Mazurek wrote a note on the comments section of the review form stating: "During the first trimester Jackie was on FMLA which had been approved by HR.  FMLA was [approximately] 1.2 [weeks]."  *Id*. ¶ 88.  On May 31, 2007, the plaintiff met with Jennifer Kurr Holgerson in the defendant's human resources department to discuss a rebuttal to the 2007 first trimester evaluation.  *Id*. ¶¶ 98-100.  Holgerson advised the plaintiff to ask Mazurek to clarify her expectations about the plaintiff's performance.  *Id*. ¶ 102.

Either that day or the next, Holgerson reported to her supervisor, Crosby, that the plaintiff felt that she was being picked on by her manager for recent time away from work.  *Id*. ¶ 108.  Crosby told Holgerson that she was already working with the plaintiff's managers regarding her performance.  *Id*. ¶ 109.  The plaintiff gave her rebuttal to Mazurek on May 31, 2007 with a signed copy of her first trimester 2007 evaluation.  *Id*. ¶ 110.  At some point, Crosby contacted Mazurek and mentioned the possibility of changing the plaintiff's reporting line.  *Id*. ¶¶ 111-12.  In a June 5, 2007 e-mail to Mazurek, Crosby recommended that a subordinate manager, Becky Grover, act as a middle person between the plaintiff and Mazurek.  *Id*. ¶¶ 113-14.  Mazurek was upset by this suggestion.  *Id.* ¶ 117.  Crosby did not indicate to Mazurek that the plaintiff had suggested changing her reporting line.  *Id*. ¶ 116.

In a conversation with Mazurek, Campbell advised her to finish a response to the plaintiff's rebuttal and said that she planned to have a meeting on June 11, 2007 to discuss the plaintiff's rebuttal.  *Id*. ¶¶ 119-20.  On June 7, 2007, Mazurek received a positive e-mail from a

fellow manager about the plaintiff's good work on a project. *Id.* ¶ 123. At the June 11, 2007 meeting, Campbell, Crosby, and Mazurek reviewed the plaintiff's rebuttal and Mazurek's response. *Id.* ¶ 126. At a later meeting that day with Crosby and representatives of Human Resources, Campbell proposed that the plaintiff be terminated and the others concurred. *Id.* ¶ 130. Campbell created notes to use when terminating the plaintiff. *Id.* ¶ 132. Campbell informed the plaintiff of the following reasons for her termination: performance, personal calls, lack of professionalism, absenteeism, and interactions/communications. Defendant's SMF ¶ 53; Plaintiff's Responsive SMF ¶ 53. No representative of the defendant ever stated that the plaintiff's assertion of FMLA rights was in any way connected with her termination. *Id.* ¶ 57.

The defendant's progressive discipline policy was, first, to give a verbal warning, then a written warning, and finally a job-in-jeopardy notice before termination. Plaintiff's SMF ¶ 149; Defendant's Responsive SMF ¶ 149. The plaintiff was not given a job-in-jeopardy notice prior to her termination. *Id.* ¶ 151.

### III. Discussion

The plaintiff's first amended complaint alleges that the defendant violated the FMLA by terminating the plaintiff's employment "for exercising her rights to leave under the FMLA." First Amended Complaint, etc. ("Complaint") (Docket No. 4) ¶ 24. The defendant contends that it is entitled to summary judgment on this claim because the plaintiff cannot establish a nexus between her invocation of her rights under the FMLA and her termination. Alternatively, the defendant argues that summary judgment should be granted in its favor because it has demonstrated legitimate business reasons for its decision to terminate the plaintiff's employment, and the plaintiff cannot establish that these reasons were pretextual. Defendant's Motion for Summary Judgment, etc. ("Motion") (Docket No. 17) at 1. The plaintiff responds by asserting

that the defendant "terminated her because she took medical leave and because she complained about low evaluation scores that were based on her use of FMLA leave." Plaintiff's Opposition to Defendant's Motion for Summary Judgment, etc. ("Opposition") (Docket No. 23) at 1.

The FMLA affords an eligible employee up to 12 weeks of leave during a 12-month period to care for a newborn child or adopted or foster child, to care for a spouse, child, or parent with a serious health condition, or because of a serious health condition that makes the employee unable to perform the functions of his or her job. 29 U.S.C. § 2612(a)(1). Leave may be taken intermittently when medically necessary for the employee's own serious medical condition or in order to care for a close relative. *Id*. § 2612(b)(1). "These rights are essentially prescriptive, . . . creating entitlements for employees." *Hodgens v. General Dynamics Corp*., 144 F.3d 151, 159 (1st Cir. 1998) (citation and internal quotation marks omitted).

> As to these rights, therefore, the employee need not show that the employer treated other employees less favorably, and an employer may not defend its interference with the FMLA's substantive rights on the ground that it treats all employees equally poorly without discriminating. In such cases, the employer's subjective intent is not relevant. The issue is simply whether the employer provided its employee the entitlements set forth in the FMLA[.]

*Id*. (citation omitted).

The FMLA also provides protection against discrimination by an employer against an employee who has exercised his or her FMLA rights. 29 U.S.C. § 2615. "These provisions are essentially proscriptive." *Hodgens*, 144 F.3d at 160. "In such a case, the employer's motive is relevant, and the issue is whether the employer took [an] adverse action because of a prohibited reason[.]" *Id.* The plaintiff asserts that she has brought claims of both types, Opposition at 1, even though the amended complaint presents only a single count, but she does not address the

prescriptive type of claim any further in her memorandum of law.  I therefore will not consider this argument further.[5]

In cases involving allegations of retaliation under the FMLA, the framework for analysis established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973), applies. *Hodgens*, 144 F.3d at 160.

> Under that framework, a plaintiff employee must carry the initial burden of coming forward with sufficient evidence to establish a prima facie case of . . . retaliation.  If he does so, then the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination, sufficient to raise a genuine issue of fact as to whether it discriminated against the employee.  The employer must clearly set forth, through the introduction of admissible evidence, the reasons for the employee's termination.  The explanation provided must be legally sufficient to justify a judgment for the employer.  If the employer's evidence creates a genuine issue of fact, the presumption of discrimination drops from the case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for terminating him was in fact a pretext for retaliating against him for having taken protected FMLA leave.
>
> * *
>
> To make out a prima facie case of retaliation, [the plaintiff] must show that (1) he availed himself of a protected rights under the FMLA; (2) he was adversely affected by an employment decision; (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action.

*Id*. at 160-61 (citations and internal punctuation omitted).

Here, the defendant discusses only the third element of the prima facie case, its asserted legitimate nondiscriminatory reason for discharging the plaintiff and the absence of evidence of pretext.  Motion at 7-14.  The first two elements of the prima facie case appear in any event to have been established on the summary judgment record in this case.

---

[5] Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  *In re Compact Disc Minimum Advertised Price Antitrust Litig*., 456 F.Supp.2d 131, 152-53 (D. Me. 2006).

The plaintiff argues that she need only show that her protected activity was a motivating factor in the defendant's decision to terminate her employment, citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003). Opposition at 10. The defendant does not take issue with this point. Nonetheless, the plaintiff carries the burden to demonstrate the causal connection, whether that connection is with only one of several motivating factors or with the sole motivating factor in the challenged decision.[6]

The plaintiff next asserts that the summary judgment record contains direct evidence of illegal retaliation, in that her protected activity was a factor in the decision to terminate her employment.[7] Opposition at 11. This is so, she explains, because Campbell admitted that the plaintiff's attendance was a factor in the termination. *Id*. That assertion is correct, so far as it goes. The admission does not, however, mean that the plaintiff's FMLA leave – in contrast to her attendance – was a factor. It is clear from the summary judgment record that the plaintiff had absences other than those for which she sought FMLA leave during the relevant period. *E.g.*, Defendant's SMF ¶¶ 13-15, Plaintiff's Responsive SMF ¶¶ 13-15. In addition, the evidence cited by the plaintiff is not direct evidence of FMLA retaliation because, in this context, direct evidence is evidence that does not require the factfinder to draw an inference or presumption before finding that the termination was retaliatory. *Lewis v. School Dist. #70*, 535 F.3d 730, 742 (7th Cir. 2008); *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1226 (10th Cir. 2008); *Davis v. Moore Wallace, Inc.*, 217 Fed.Appx. 313, 315 (5th Cir. 2007); *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004); *Wascura v. City of South Miami*, 257 F.3d

---

[6] The plaintiff argues that she is entitled to a "mixed motive" analysis in this case because, she argues, she has presented direct evidence of retaliation. Opposition at 10. I conclude that she has not presented any direct evidence, but even if she had, the First Circuit has said that "[w]hether a mixed-motive analysis is available at all in an FMLA case for retaliation is an open question" which it has not yet resolved. *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 335 n.8 (1st Cir. 2005).

[7] If direct evidence of retaliation were presented, the *McDonnell Douglas* framework would not apply. *Weston-Smith v. Cooley Dickinson Hosp., Inc.*, 282 F.3d 60, 64 (1st Cir. 2002).

1238, 1242 n.2 (11th Cir. 2001). The evidence cited by the plaintiff does not meet the more general test for direct evidence in the only First Circuit case she cites, *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 60-61 (1st Cir. 2000) (direct evidence "consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision").

The parties devote much of their respective submissions to the question of whether the temporal proximity between the plaintiff's protected activity and her termination is sufficient to allow a factfinder to conclude that retaliation was a factor in the termination. The plaintiff identifies that proximity as the span of time between May 30, 2007, when she last requested and obtained approval for FMLA leave, and May 31, 2007, when she "complained to Human Resources about being given lower scores on her first trimester review due to her use of FMLA leave" and submitted a rebuttal to that review mentioning the "inappropriate consideration of her FMLA leave," on the one hand, and Campbell's decision on June 11, 2007 to terminate her employment on the other. Opposition at 13. The defendant contends that this period cannot be used to establish the necessary causal connection because "that connection is undercut by the larger picture of plaintiff's employment history[]" of performance problems and absenteeism unrelated to the FMLA. Motion at 7-9.

The defendant's argument on this point addresses the weight of the evidence; it does not establish that a reasonable factfinder could not find a causal connection between the plaintiff's use of FMLA leave, before May 30 as well as on May 30 when her FMLA request was approved, and the decision to terminate her employment. At summary judgment, the court must give the plaintiff's evidence the benefit of all reasonable inferences in her favor. *Santoni*, 369 F.3d at 598. That standard means that the defendant's argument on this point cannot succeed.

Next, the defendant argues in the alternative that it has met its burden to produce evidence of legitimate, nondiscriminatory reasons for its decision to terminate the plaintiff's employment, and that the plaintiff "has not offered any direct or indirect evidence which establishes a disputed material fact on the issue of pretext." *Id*. at 9-13. The plaintiff responds that the reasons proffered by the defendant are pretexts. Opposition at 18-23. I address each specific "reason" separately.

The defendant identifies its legitimate, nondiscriminatory reasons as "absenteeism unrelated to FMLA and, more significantly, ongoing performance issues that spanned [the plaintiff's] entire employment and dated back well before her first leave request in March 2007." Motion at 8.

> She placed and received excessive personal phone calls. She lacked professionalism in the manner in which she conducted herself at work. She exercised poor management of her PTO time and had an hourly employee approach to her hours of work in a salaried position. Her interactions and communications with coworkers were unacceptable and caused discord and interference.

*Id*. The defendant also contends that Campbell did not want to increase Mazurek's work load, and she believed that the plaintiff would have preferred more direct "handholding" or "benign neglect" from Mazurek, either of which was unacceptable. *Id*. at 8-9.

### A. Change in line of reporting

The plaintiff first addresses Campbell's testimony that she believed that the plaintiff had requested that she be allowed to report to Campbell instead of Mazurek, arguing that the other individuals involved "all agree that [the plaintiff] never made any request for a change in her reporting line." Opposition at 19. From this undisputed fact, the plaintiff jumps to the conclusion that "[t]herefore, there was never any reasonable basis for Campbell to believe that [the plaintiff] was demanding a change in managers or that [she] wanted to again be managed by

Campbell." *Id*. However, this is not the legal test. Rather, the plaintiff must show that Campbell did not believe that the plaintiff made such a request. *Ronda-Perez v. Banco Bilbao*, 404 F.3d 42, 45 (1st Cir. 2005).[8] Finally, the defendant contends that Campbell in any event never testified that she terminated the plaintiff's employment for this reason, Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Reply") (Docket No. 28) at 6, but that argument need not be reached, as the plaintiff has not made the required showing under the applicable standard.

### B. Performance deficiencies

The plaintiff next asserts that reliance on performance deficiencies is a pretext because all of her performance reviews for the entire period during which she worked for the defendant showed that she "met her managers' expectations in 228 of 230 areas reviewed and exceeded their expectations in half of areas reviewed." Opposition at 20. Therefore, she concludes, any claim that she performed poorly "is inconsistent with and contradicted by the evidence." *Id*. She also asserts that the defendant "cites to [her] compliance minutes as the single example of her deficient performance." *Id*. This is simply not the case. The defendant offered evidence of many other instances of deficient performance. Defendant's SMF ¶¶ 9-11, 38-39, 43-45, 49. Further, the mere existence of favorable performance reviews does not preclude the defendant from offering evidence that the plaintiff's performance was in fact deficient, whether in areas

---

[8] The plaintiff speculates further that, because Campbell met with the other individuals involved in the plaintiff's rebuttal to her final performance evaluation before Campbell decided to terminate the plaintiff's employment "the miscommunications would have been cleared up unless Mazurek and Crosby allowed Campbell to continue in her mistaken belief[.]" Opposition at 19. The plaintiff then concludes that "either Mazurek and Crosby intentionally withheld important information from Campbell . . . or Campbell's claim . . . is untrue[.]" Neither the intermediate nor the final conclusion necessarily follows from the premise. All that the plaintiff offers here is speculation upon speculation. I note also that, had Mazurek and Crosby "intentionally withheld important information from Campbell," it is only Campbell's belief in the accuracy of the information she had that is relevant.

included in the reviews or in areas not mentioned in the reviews. The plaintiff takes nothing by this argument.

### C. Phone calls at work

The plaintiff addresses the defendant's reliance on her "receipt of personal phone calls at work and alleged lack of professionalism at work" by asserting that the "[d]efendant is presumably referring to the March 23, 2007 conversation that Mazurek had with [the plaintiff] regarding the calls she was taking from her parents' doctors about her parents' care." Opposition at 21. That presumption is not warranted by the summary judgment record. The evidence submitted by the defendant on this point is not so limited. *See, e.g.,* Defendant's SMF ¶¶ 11, 36-38, 43-44, 49. The plaintiff gains little by this argument.

### D. Poor PTO management

The plaintiff asserts that the issues of poor PTO management, an hourly employee approach to a salaried position, and unacceptable interactions and communications with coworkers all arose between June 2005 and October 2005, were "successfully addressed . . . by November 4, 2005[,]" and did not recur. *Id.* She contends that "[i]t is highly implausible that these issues motivated Defendant's termination decision" because they occurred over a year and a half before the termination decision was made and the plaintiff received "favorable performance evaluations after the last date these issues occurred." *Id.* at 21-22. I have already addressed the plaintiff's reliance on the performance reviews. The plaintiff's assertion that all such events occurred before October 2005 is incorrect. *See* Defendant's SMF ¶¶ 9-10, 38, 43-46. Accordingly, her argument on this point lacks a factual basis. Similarly, the plaintiff asserts that the defendant "also claims that [the plaintiff] was terminated for her reaction to her first trimester

15

2007 review[,]" Opposition at 22, but cites to a paragraph of her own statement of material facts that does not support this assertion. I, therefore, need not consider this argument.

### E.  Deviation from discipline policies

Next, the plaintiff argues that the defendant deviated from its established employee discipline policies with regard to her in that she was terminated "despite good performance reviews and only one verbal warning in the last year and a half" without the written warning and job-in-jeopardy notice required before termination under the defendant's written progressive discipline policy. *Id.* at 22-23. The defendant responds that "it makes no sense to counsel an employee that her expression of dissatisfaction with her supervisor and request for further coaching reflects an ongoing and unacceptable pattern." Reply at 7. However, since "[d]eviation from established policy or practice may be evidence of pretext[,]" *Brennan v. GTE Government Sys. Corp.*, 150 F.3d 21, 29 (1st Cir. 1998) (Age Discrimination in Employment Act claim), a mere assertion that "it makes no sense" to comply with such a policy is not sufficient to prevent that deviation from being considered as evidence of pretext. A disputed issue of fact remains with respect to this point.

### F.  Disparate treatment

Finally, in an apparent response to the defendant's contention that the plaintiff "has failed to produce evidence that any similarly situated employees not engaged in FMLA activity were treated more leniently," Motion at 12, the plaintiff asserts that "there is strong evidence of disparate treatment in this case," Opposition at 23. She identifies that evidence as Crosby's "expla[nation] that the only other instances of a person being fired by Defendant despite having performance evaluations as good as [hers] were in situations where the employee was found to be responsible for a large amount of cash missing." *Id.* She cites paragraph 153 of her statement

16

of material facts in support of this argument. *Id*. The defendant denies that paragraph, Defendant's Responsive SMF ¶ 154, and asserts, correctly, that the plaintiff's paragraph mischaracterizes the testimony of Crosby on which it claims to be based. Crosby's testimony was that there were other instances of employees with similar performance evaluations being fired, declined to name them, and gave an example of a situation that would warrant such a termination. Deposition of: Carolyn Crosby (Exh. 28 to Plaintiff's Responsive SMF) at 31. This is not "strong evidence of disparate treatment." It may, however, be *some* evidence of disparate treatment. It is impossible to draw any conclusion on that question from the summary judgment record in its current state. Accordingly, a disputed issue of material fact remains in this regard.

To summarize, I conclude that there are disputed issues of material fact as to the question whether the legitimate, nondiscriminatory reasons offered by the defendant for the plaintiff's dismissal are pretextual. That conclusion, in turn, makes it necessary to deny the defendant's motion for summary judgment.

### IV. Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment be **DENIED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 27th day of June, 2008.

                                                <u>/s/  John H. Rich III</u>
                                                John H. Rich III
                                                United States Magistrate Judge